TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00186-CV






First-Citizens Bank & Trust Company, Appellant


v.


American Constructors, Inc., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. D-1-GN-08-002044, HONORABLE SCOTT OZMUN, JUDGE PRESIDING



 

M E M O R A N D U M O P I N I O N


 First-Citizens Bank ("FCB") appeals a final summary judgment on claims it had
asserted against American Constructors, Inc. ("ACI"). FCB had sued ACI to recover amounts that
ACI allegedly had paid to one of ACI's subcontractors after the subcontractor had purported to
assign its rights to those payments to FCB. The principal issue on appeal is whether FCB presented
summary-judgment evidence raising a fact issue as to whether FCB had given ACI notice of the
assignment as required by section 9.406 of the business and commerce code. See Tex. Bus. & Com.
Code Ann. § 9.406(a) (West 2002 & Supp. 2009). We will affirm the judgment. 


BACKGROUND

 ACI, an Austin-based construction company, was hired to build an elementary school
for the Austin Independent School District. ACI subcontracted with Complete Communications
Services, Inc. d/b/a Co Com Cabling Systems ("CoCom") for installation of cabling systems. In
2006, CoCom entered into an "Accounts Receivable Purchase and Security Agreement" with FCB.
This agreement contemplated that CoCom would sell and transfer accounts receivable to FCB in
exchange for FCB's advancing funds to CoCom. CoCom later purported to sell and assign to FCB
its accounts receivable from its work under its subcontract with ACI.

 Section 9.406 of the business and commerce code provides: 


 (a) [A]n account debtor on an account, chattel paper, or a payment intangible may
discharge its obligation by paying the assignor until, but not after, the account debtor
receives a notification, authenticated by the assignor or the assignee, that the amount
due or to become due has been assigned and that payment is to be made to the
assignee. After receipt of the notification, the account debtor may discharge its
obligation by paying the assignee and may not discharge the obligation by paying the
assignor.


 . . . .


 (c) [I]f requested by the account debtor, an assignee shall seasonably furnish
reasonable proof that the assignment has been made. Unless the assignee complies,
the account debtor may discharge its obligation by paying the assignor, even if the
account debtor has received a notification under Subsection (a).



Tex. Bus. & Com. Code Ann. § 9.406(a). On or about August 13, 2007, ACI received a letter from
a law firm acting on FCB's behalf advising it that CoCom had assigned to FCB its rights to payment
from ACI. The letter advised ACI that any future payments ACI owed to CoCom should be directed
to FCB. ACI temporarily withheld funds otherwise due to CoCom while ACI sought to confirm the
validity of the assignment from CoCom to FCB. CoCom never provided that confirmation; instead,
it filed for bankruptcy on August 24, 2007. 

 In June 2008, FCB sued ACI alleging that ACI had actually received notice of
the assignment in March 2007, yet had continued to make payments directly to CoCom between
May 24, 2007 through July 16, 2007. FCB sought recovery of what it alleged was the amount
of those payments, as well as attorney's fees. ACI answered and alleged affirmative defenses that
included FCB's failure to give notice as required by section 9.406 until August 13, 2007. (1) 

 ACI subsequently filed a motion for summary judgment relying on both traditional
and no-evidence grounds. ACI asserted that FCB had no evidence that it had sent the required
authenticated notice of the assignment to ACI prior to August 13, 2007, no evidence that ACI
had received any such notice before that date, and no evidence to support any elements of its cause of
action that ACI wrongly paid CoCom monies to which FCB was entitled. ACI further asserted
that the evidence conclusively established that ACI had not received the required notice of
the assignment before August 13, 2007, and that the assignment was barred under CoCom's
subcontract with ACI.

 In support of its summary-judgment motion, ACI presented evidence that no one
with the company had received any written or oral communication from FCB informing it about
the assignment until the August 13, 2007 letter. ACI's chief financial officer, Tom Mistler, testified
by affidavit that he had investigated and determined, after receiving FCB's August 13, 2007 letter,
that ACI had not received any previous written or oral notice of the assignment. He added that if
ACI had received notice of the assignment in March 2007, "it would have immediately started
withholding funds otherwise due to CoCom pending confirmation of the validity of the assignment,
just as it did when it actually received notice in August 2007."

 Mistler also addressed allegations by FCB that it had sent ACI the required
written notice by certified mail in March 2007 and received a signed "green card" in return. FCB
had attached to its petition a copy of a green card bearing the article number 7006 2760 0002 1426
5501. In the green card's box for "Article Addressed to" is typed "American Constructors Inc." and
ACI's address, a suite in an office building located on Austin's MoPac Expressway. A box is also
checked indicating that whatever item the green card had accompanied was sent by certified mail. 
The portion of the green card to be completed on delivery is signed "Amer Cont" as agent for
(handwritten) "Amer Const," with a handwritten date of delivery indicated as "3/26/07." Mistler
testified that no ACI employee had signed for a certified letter from FCB in March 2007 and that the
signature appearing on the aforementioned green card was not that of any ACI employee or agent.

 ACI presented similar affidavit testimony from its receptionist, Pamela Danzy. Danzy
averred that she is responsible for receiving and opening all mail ACI receives and forwarding it
to the appropriate ACI personnel. She explained that when receiving certified mail for ACI, "I
sign my signature to the certified mail receipt (also known as the 'green card'), attach the envelope
to the letter, and forward it to the appropriate person." Danzy denied that ACI had received any
correspondence from FCB regarding CoCom's assignment before August 2007, that she ever
received or signed for such a certified letter, that she had ever seen the aforementioned green card
before the litigation, or that the green card had ever been received by ACI. She added that "[t]he
signature notation of 'Amer Const.' on the 'green card' is not my signature, nor is it signed in
accordance with the practice of American Constructors for receipt of certified mail."

 Along with Mistler's and Danzy's testimony, ACI presented an affidavit provided
by the mail carrier who serves the office building where ACI's offices are located, Mike Botelo. 
Botelo acknowledged that before the summer of 2007, "my standard delivery practice for delivering
certified mail to the businesses within ACI's office building" was to "sign myself all certified mail
receipts for the various businesses located in the building and then deliver the mail to the various
mailboxes." Botelo admitted that the aforementioned green card "bears my signature."

 ACI also challenged whether FCB had evidence that it had sent the required
authenticated notice to ACI in March 2007 or that ACI had received it. ACI relied on deposition
testimony from Brenda Brown, FCB's portfolio manager for the working capital group. Brown
testified that FCB did not have a copy of any signed notice letter purportedly sent to ACI in
March 2007 and that FCB does not keep copies of such letters, which are generated by computer. 
ACI also emphasized the deposition testimony of Becky Brower, an operations supervisor for FCB
who oversees two employees in handling the bank's factoring operations. Brower explained that her
department's responsibilities included sending notice letters to account debtors whose account
creditors had assigned their rights to payment to FCB. Brower explained that FCB kept files on
computer for each client and subfiles for each client's account debtors. According to Brower, each
day the computer system automatically generates notice letters for each "new" account debtor that
had been added that day, and she or her staff prepare envelopes for the letters and certified-mail
sender's receipts (the small white document) with corresponding certified-mail return receipts
(green cards) to go on the envelopes. Once the envelopes are mailed, Brower indicated, her
department retains the white sender's receipts in a file. After FCB receives the returned green card
from the postal service, Brower explained, it is matched with the corresponding white sender's
receipt and placed in the file, and the date of delivery indicated on the green card is entered into the
computer system.

 Brower indicated that FCB's computer entries concerning ACI were consistent with
a notice letter having been generated and sent by certified mail in March 2007. She added that a
green card--the same as that attached to FCB's petition--had been returned and placed in the file
and that the article number corresponded to that of the white sender's receipt that had been retained
in the file. Brower also testified concerning a screen print-out from the United States Postal Service
website that purported to indicate, based on the article number, that a letter had been delivered in the
same Austin, Texas ZIP code where ACI is located on March 26, 2007. However, Brower made a
number of admissions concerning her inability and that of other FCB personnel to testify to any
additional facts regarding whether FCB had sent or ACI had received a notice letter in March 2007:

 


 Brower had no personal knowledge that any notice letter, in any form, was actually sent by
anyone at FCB to ACI. She added that she had no memory of signing such a letter (2) or even
seeing one, or of typing an envelope or certified-mail receipt for such a letter, and that she
had "no idea" as to anyone who did. While she insisted that "I know it went," Brower
indicated that her belief was based on "the green card I got back." 

 FCB does not retain hard copies of the notice letters it generates and sends out.

 There was nothing at FCB that could tie the certified-mail receipt number to a particular
letter. For example, the text of notice letters are a form and do not include the certified-mail
number.

 Neither Brower nor anyone else at FCB knows whether a notice letter or the green card were
ever actually delivered to ACI, who signed the green card, whether this person was actually
an agent of ACI, and whether the date of delivery was correct. Brower added that the only
information on the green card for which FCB personnel would have knowledge was the
typewritten address and the indication that certified mail was the method of service. She
further admitted that while FCB retained green cards as part of its regular business practices,
the recording of the delivery information on the cards was not FCB's activity, but occurred
outside the bank and beyond its control or knowledge.

 Brower knew of no one from FCB who had spoken with ACI prior to August 2007.



 In response to ACI's summary-judgment motion, FCB presented a copy of Brower's
deposition (which, unlike ACI's copy, included as exhibits the green card and white sender's
receipt about which she testified), as well as an affidavit from Brower. With Brower's affidavit were
exhibits that included the green card, white sender's receipt, USPS website printout, screen prints
from FCB's computer system reflecting that a letter was mailed to ACI on March 21, 2007, and what
Brower claimed was a "reprint" of the notice letter that FCB had sent to ACI, also dated March 21,
2007. Brower purported to prove up these documents (including "the American Constructors, Inc.
green card"), verified that the letter had been sent to ACI, and correlated the certified-mail
documents to the "reprinted" letter. 

 FCB also objected to Botelo's affidavit on the basis that it violated federal regulations
that shield postal-service employees from "demands for testimony" in certain legal proceedings. See
39 C.F.R. § 265.12 (2009). With this, FCB attempted to present two letters from a USPS paralegal
to the effect that the postal service had not authorized Botelo to provide his affidavit nor
authorized its use.

 FCB argued that Brower's deposition and affidavit raised a fact issue as to whether
FCB had sent ACI a notice letter and that her affidavit--or even the green card alone--raised a
fact issue as to whether ACI had received the letter. ACI objected to the two postal-service letters
as hearsay and to several portions of the Brower affidavit and attachments based on hearsay, lack of
personal knowledge, and contradiction with her prior deposition testimony.

 Following a hearing, the district court overruled FCB's objection to the Botelo
affidavit, sustained ACI's objections to the two letters, and sustained some but not all of ACI's
objections to Brower's affidavit and attachments. The court specifically granted ACI's "Traditional
Motion for Summary Judgment," but denied additional relief. This appeal followed.


ANALYSIS

 FCB brings four issues on appeal. In its first issue, FCB complains of the
district court's admission of the Botelo affidavit and its exclusion of the two letters. In FCB's
second issue, it complains of the district court's rulings excluding portions of Brower's affidavit
and attachments. In its fourth issue, FCB contends that regardless of our disposition of its first
two issues, the summary-judgment evidence presents a fact issue as to whether ACI received notice
of the assignment as required by section 9.406. In its third and remaining issue, FCB challenges
whether ACI was entitled to summary judgment on the ground that CoCom was barred by ACI's
subcontract from assigning its receivables to FCB.

 We review the district court's summary judgment de novo. Valence Operating Co.
v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues
of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c);
Knott, 128 S.W.3d at 215-16. In determining whether there is a disputed material fact issue
precluding summary judgment, we take as true proof favorable to the nonmovant, and we indulge
every reasonable inference and resolve any doubt in favor of the nonmovant. Randall's Food Mkts.,
Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).

 As a movant seeking summary judgment against claims of a nonmovant based on
affirmative defenses, ACI had the initial burden of establishing its entitlement to judgment as a
matter of law by conclusively establishing each element of at least one of those affirmative defenses. 
See M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam)
(citing Rhône-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 222-23 (Tex. 1999); Oram v. General Am.
Oil Co., 513 S.W.2d 533, 534 (Tex. 1974) (per curiam)). Assuming ACI met this burden, the burden
shifted to FCB to file a timely written response presenting grounds for denying summary judgment. 
See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). Grounds that
FCB did not expressly present to the trial court by written response cannot be considered as
grounds for reversal on appeal. Tex. R. Civ. P. 166a(c); Clear Creek Basin Auth., 589 S.W.2d
at 678. ACI's motion must stand on its own merits, however, and thus FCB is not precluded
from contending on appeal that the grounds presented in ACI's motion were legally insufficient
to entitle it to summary judgment. Rhône-Poulenc, 997 S.W.2d at 223 (citing Clear Creek Basin
Auth., 589 S.W.2d at 678). Additionally, ACI bears the burden on appeal of showing that there is
no genuine issue of material fact and that it is entitled to judgment as a matter of law. See id.

 We review the district court's rulings concerning the admission or exclusion
of summary-judgment evidence for an abuse of discretion. See, e.g., Fairfield Fin. Group, Inc.
v. Synnott, 200 S.W.3d 316, 319 (Tex. App.--Austin 2009, no pet.) (admission of summary-judgment evidence); Cruikshank v. Consumer Direct Mortgage, Inc., 138 S.W.3d 497, 499
(Tex. App.--Houston [14th Dist.] 2004, pet. denied) (exclusion of summary-judgment evidence). 
An abuse of discretion exists only when the court's decision is made without reference to any
guiding rules and principles or is arbitrary or unreasonable. Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985). We must uphold the district court's evidentiary ruling if
there is any legitimate basis for it. See Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d
35,43 (Tex. 1998). Moreover, we will not reverse a judgment based on a claimed error in admitting
or excluding evidence unless the complaining party shows that the error probably resulted in
an improper judgment. Tex. R. App. P. 44.1; Malone, 972 S.W.2d at 43; City of Brownsville
v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). A successful challenge to a trial court's evidentiary
rulings requires the complaining party to demonstrate that the judgment turns on the particular
evidence excluded or admitted. Texas Dep't of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000).

 We need not reach FCB's first issue urging that Botelo's affidavit must be excluded
under 39 C.F.R. § 265.12. (3) Even if the Botelo affidavit is excluded, as FCB urges, we conclude
that ACI met its initial summary-judgment burden to conclusively establish that it did not receive
the required notice of the assignment before August 2007. We have previously summarized ACI's
summary-judgment evidence. The testimony of Mistler and Danzy that ACI personnel did not
receive a notice letter or any certified letter from FCB and did not receive or sign the green card on
which FCB relies was clear, positive, direct, free of inconsistencies, and capable of being readily
controverted. See Tex. R. Civ. P. 166a(c). The burden thus shifted to FCB to present competent
summary-judgment evidence raising a fact issue on that point. 

 To raise a fact issue, FCB relies on Brower's affidavit and attachments. In its second
issue on appeal, FCB complains of the district court's "exclusion" of the Brower "business records
affidavit . . . includ[ing] copies of the Green Card, the Certified Mail sender's receipt of the
assignment letter sent to ACI, [and] a printout of a United States Postal Service internet page
confirming delivery of the assignment letter." FCB recites the requirements for proving up business
records, asserts generally that Brower's testimony met these standards, and concludes that the
district court's "exclusion" of the Brower affidavit "constitutes reversible error and abuse of
discretion because the Green Card clearly creates a genuine issue of material fact."

 FCB's arguments do not correspond to the ruling the district court actually made. The
court did not exclude the entire Brower affidavit, only certain portions of it. The following
statements were excluded:


 "A true and correct copy of the American Constructors, Inc. green card is
included in Exhibit 'D-1.'" 

 "This letter [referring to the purported 'reprint'] was mailed to American
Constructors, Inc. certified/return-receipt requested and the receipt is
maintained in the file, according to our policies and procedures. When the
green card is return[ed], it is placed into the same file. As shown in Exhibit
'D-1,' the tracking number from the receipt and the green card match up." 

 "The reprint of the letter to American Constructors, Inc. shows that it was
mailed on or about March 21, 2006 [sic]."


 


Moreover, the district court admitted all of the affidavit's attachments, including the green card,
white sender's receipt, and USPS website printout, except for the purported "reprint" of the notice
letter, which was excluded.

 The evidence excluded by the district court was flatly inconsistent with Brower's
prior deposition testimony. During her deposition, Brower admitted that neither she nor anyone
at FCB had personal knowledge whether any form of notice letter had been sent to ACI, whether a
notice letter or green card had ever actually been delivered to ACI, who had signed the green card,
or when. In her affidavit, by contrast, Brower averred that she had personal knowledge that
a specific notice letter--the "reprint" dated March 21, 2007--had been sent by certified mail to ACI
and that the green card was "[a] true and correct copy of the American Constructors, Inc.
green card." To be competent summary-judgment evidence, affidavits must be made on personal
knowledge, see Tex. R. Civ. P. 166a(f), and Brower's deposition testimony demonstrates that she
did not have personal knowledge of these facts. While Brower recites in her affidavit that her
testimony "is based on my personal knowledge and experience," she provides no basis for any
sudden claim to personal knowledge. FCB has not shown that the district court abused its
discretion in excluding this evidence. See Eslon Thermoplastics v. Dynamic Sys., Inc., 49 S.W.3d
891, 901 (Tex. App.--Austin 2001, no pet.) (discussing "sham" affidavits); Farroux v. Denny's
Rests., Inc., 962 S.W.2d 108, 111 (Tex. App.--Houston [1st Dist.] 1997, no pet.) ("Without an
explanation of the change in testimony, we assume the sole purpose of the affidavit was to avoid
summary judgment."). We overrule FCB's second issue.

 As for the evidence that was admitted--the green card, white sender's receipt,
USPS web page printout, FCB computer records printout, and other testimony by Brower--it
demonstrates only that a document was sent by FCB via certified mail to ACI's address in
March 2007, that a green card signed "Amer Cont" by an unidentified person purporting to act as
an agent of ACI and indicating receipt on March 26, 2007 was returned to FCB, and that the postal-service website indicates that a certified letter bearing the tracking number corresponding to the
green card and white sender's receipt was delivered on that date somewhere in the same area code
where ACI's offices are located. This evidence falls short of controverting ACI's evidence that
it never received a certified letter or other document from FCB in March 2007 and that the "Amer
Cont" signature on the green card was not that of any ACI employee or agent. See Smith v. Holmes,
53 S.W3d 815, 817-18 (Tex. App.--Austin 2001, no pet.).

 In a final alternative argument on the question of receipt, FCB urges that Botelo's
affidavit, if admitted, raises a fact issue as to whether he delivered the certified letter with the
green card to ACI. Botelo, as noted, admitted that his "standard delivery practice for delivering
certified mail to the businesses within ACI's office building" was to "sign myself all certified mail
receipts for the various businesses located in the building" and that he had been the person
who signed the green card "Amer Const." FCB did not present any evidence that Botelo had been
authorized to sign for certified mail on ACI's behalf; consequently, the affidavit, if admitted, would
be additional proof negating ACI's receipt of notice. See City of Houston v. Riner, 896 S.W.2d
317, 319-20 (Tex. App.--Houston [1st Dist.] 1995, writ denied) (holding notice ineffective when
security guard signed and accepted mail on behalf of building occupant without occupant's
authority); United Nat'l Bank v. Travel Music of San Antonio, Inc., 737 S.W.2d 30, 31-32
(Tex. App.--San Antonio 1987, writ ref'd n.r.e.) (holding notice ineffective when signed for by
someone other than the intended addressee). FCB emphasizes, however, that Botelo testified he
would, after signing the green cards, "then deliver the mail to the various mailboxes." FCB reasons
that Botelo's statement presents a fact issue as to whether he correctly deposited the notice letter
in ACI's mailbox. Without more, we cannot agree. At most, Botelo's statement might support the
inference that he deposited the certified letter in one of the building's mailboxes, but it does not
controvert ACI's evidence that the letter never made it to ACI. See Smith, 53 S.W.3d at 818.

 Because FCB failed to present competent summary-judgment evidence raising a
fact issue as to whether ACI received the required notice of the assignment prior to August 2007,
the district court properly granted summary judgment on ACI's affirmative defense that FCB failed
to comply with business and commerce code section 9.406. We overrule FCB's fourth issue. We
need not reach FCB's third issue challenging the alternative summary-judgment ground that any
assignment by CoCom was invalid.



CONCLUSION

 We affirm the district court's judgment. 


 

 _________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: May 21, 2010
1. ACI also counterclaimed and asserted third-party claims in interpleader with respect to a
balance of approximately $90,000 remaining on the CoCom subcontract. Those claims are not at
issue on appeal. However, complaining that FCB persisted in bringing this appeal prematurely while
the interpleader claims were still pending and the summary judgment was not yet final, ACI moved
to dismiss the appeal and for an award of attorney's fees and costs incurred in preparing and
prosecuting its motion as sanctions. The jurisdictional defect has since been cured. We overrule
ACI's motion.
2. In fact, Brower indicated that FCB used her stamped signature on such letters. 
3. We hold that the district court did not abuse its discretion in excluding the two letters from
the USPS paralegal as hearsay. FCB insists that it "did not offer the Letters into evidence to prove
the truth of the matters contained therein; rather, FCB offered the Letters to show that both FCB
and ACI had notice of their receipt and is thus an exception to hearsay under Tex. R. Evid. § 801."
But on appeal, as well as in its summary-judgment response, FCB relies on the contents of the letters
to support its argument that the Botelo affidavit should be excluded because ACI purportedly
obtained it in violation of 39 C.F.R. § 265.12.